USDC SCAN INDEX SHEET

















AXR    1/24/05    10:51

3:05-CV-00025   LIERMAN V. AVNET

*7*

*P/A.*

FILED ORIGINAL

05 JAN 21 PH 3: 49

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ DEPUTY

1   Craig E. Hunsaker, Esq. (SBN 168829)
    Kristi Bess Panikowski, Esq. (SBN 218643)
2   FISH & RICHARDSON P.C.
    12390 El Camino Real
3   San Diego, CA  92130
    Telephone: (858) 678-5070
4   Facsimile:  (858) 678-5099

5   Attorneys for Defendant
    AVNET, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA    **BY FAX**

10

11  DONALD LIERMAN,                     Case No. 05-CV-0025 W (WMC)

12            Plaintiff,                **DEFENDANT AVNET, INC.'S
                                        MEMORANDUM OF POINTS AND
13        v.                            AUTHORITIES IN RESPONSE TO
                                        ORDER TO SHOW CAUSE RE REMAND**
14  AVNET, a New York Corporation; and DOES 1
    through 100, inclusive,             The Honorable Thomas J. Whelan
15                                      Courtroom 7, 3rd Floor
            Defendants.
16

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28
                                        Case No. 05-CV-0025 W (WMC)

1    Pursuant to the Court's January 7, 2005 Order to Show Cause ("OSC"), Defendant Avnet,

2  Inc. ("Defendant") hereby submits the following Memorandum of Points and Authorities in

3  response to the OSC:

4  **I.    INTRODUCTION/BACKGROUND FACTS**

5    • On June 12, 2002, Defendant terminated Plaintiff's employment as part of a Reduction

6  in Force. (*See* Ex. 2; *see also* Complaint, ¶ 13.)

7    • During Plaintiff's last year of employment, he earned $50,000.00 in base salary with a

8  commission structure of 4.4 percent of gross profit dollars, which amounted to approximately

9  $83,000.00 annually. (*See* Exs. 3-6; Ex. 7, at 2; *see also* Complaint, ¶ 12.)

10    • On October 11, 2002, approximately four months after Plaintiff's separation from

11 employment with Defendant, Plaintiff's counsel, John R. Goffar, sent a letter to Defendant's CEO,

12 Roy Vallee, in which he disputed the lawfulness of Plaintiff's termination and requested a

13 $250,000.00 settlement payment in exchange for a release of all claims against Defendant ("the

14 Demand Letter"). (*See* Ex. 7, at 6.) Mr. Goffar stated that this proposed settlement amount

15 "represents two year's worth of salary plus emotional distress damages." (Ex. 7, at 6.)

16    • In the Demand Letter, Mr. Goffar contended that, upon termination of his employment,

17 Plaintiff "immediately slipped into a deep state of depression that has not subsided." (Ex. 7, at 3.)

18    • On December 4, 2002, Mr. Goffar sent a letter to Defendant's in-house counsel, Viet Le,

19 and asserted that he had "spent many hours conversing with [Plaintiff] regarding the possible

20 outcomes of this case and the time and energy spent pursuing it." (Exhibit 8, at 2.)  Mr. Goffar

21 urged Ms. Le to "reconsider [Defendant's] blanket denial of liability and decision not to make a

22 settlement offer." (Ex. 8 at 2.)

23    • On August 13, 2004, Plaintiff filed the *Complaint for Damages* for: 1) *Discrimination*

24 *Based Upon Age* in Violation of Gov. Code 12940 Et. Seq.; 2) *Failure to Prevent and Remedy*

25 *Discrimination* in Violation of Gov. Code § 12940 Et [sic] Seq. ("the Complaint"). (*See* Notice of

26 Removal, Ex. 1.)

27 / / /

28 / / /

1

1    • In the Complaint, Plaintiff's prayer for relief includes a request for back pay, front pay,

2    medical expenses, general damages, interest, punitive damages, and attorney's fees in an

3    unspecified amount. (Complaint, at 6:4-13.)

4    • On December 7, 2004, Defendant acknowledged receipt of the Complaint. (*See* Notice of

5    Removal, Ex. 1.)

6    • On January 5, 2005, Defendant answered the Complaint. (*See* Notice of Removal, Ex. X

7    1.)

8    • On January 6, 2005, Defendant filed its Notice of Removal with this Court. (See Notice

9    of Removal.)

10   • On January 7, 2005, the Court issued its OSC, which included an option for the parties to

11   voluntarily stipulate to remand. *See* OSC at n.1.

12   • On January 18, 2005, Defendant's counsel, Craig Hunsaker, sent a letter to Goffar in

13   which he offered to stipulate to remand of the action to state court if Plaintiff would agree in writing

14   that his damages were less than this Court's jurisdictional minimum, $75,000.00. (*See* Ex. 9.)

15   • On January 19, 2005, Goffar responded to the 1/8/05 Hunsaker letter via voice mail, and

16   stated that "[w]e're not interested in stipulating to that the case is worth less than the jurisdictional

17   limit, so that's not an option … we're not willing to stipulate to anything below the jurisdictional

18   limit." (*See* Ex. 10.).

19   **II.    LEGAL STANDARD**

20   If the complaint at issue does not specify a particular amount of damages, the Defendant

21   bears the burden of establishing "by a preponderance of the evidence that the amount in controversy

22   exceeds [$75,000.00]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

23   Courts have interpreted this burden to require the defendant to "provide evidence establishing that it

24   is 'more likely than not' that the amount in controversy exceeds" the statutory requirement. *Id.*

25   (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996).) To that end,

26

27

28

Case No. 05-CV-0025 W (WMC)

1  "the amount in controversy must be determined as of the date of removal." *Conrad Associates v.*

2  *Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998).[1]

3  **III.   LEGAL ANALYSIS**

4      The amount in controversy equation includes "claims for general and special damages

5  (excluding costs and interests), including attorneys [sic] fees, if recoverable by statute or contract,

6  and punitive damages, if recoverable as a matter of law." *Conrad Associates*, 994 F. Supp. at 1998-

7  99 (citing *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (S.D. Cal. 1995); *Miller v. Michigan*

8  *Millers Ins. Co.*, 1997 WL 136242 (N.D. Cal. 1997).)[2]  For purposes of establishing the amount in

9  controversy requirement, a court may consider, among other things, the type and extent of a

10  plaintiff's injuries, the damages recovered in similar cases, and settlement demands, negotiations

11  and representations made by the parties during those negotiations. *See, e.g., Sayre v. Potts*, 32 F.

12  Supp. 2d 881, 886 (S.D. W.V. 1999); *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198 (N.D. Cal.).

13      **A.   Plaintiff's Admissions Satisfy the Amount in Controversy Requirement**

14      Plaintiff has admitted that he values his damages well in excess of $75,000.00. (*See* Ex. 7,

15  at 6; Ex. 10; Complaint, at ¶ 12.)  A Plaintiff's admissions, including those in settlement demands,

16  are admissible and persuasive for purposes of establishing the jurisdictional minimum. *See, e.g.,*

17

18      [1] The Court correctly states that Plaintiff's damages "may be mitigated by earnings subsequent to [Plaintiff's] termination or his failure to mitigate." (OSC, at 3:5-6 (citing Defendant's Sixth Affirmative Defense.) However, the mitigation question requires extensive analysis of the facts and the law, including expert reports, depositions and other discovery, and, accordingly, must be resolved at a much later stage in the litigation. Moreover, even if mitigation factors ultimately played a role in the damage award, it is settled that "diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction ... if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. and Servs. Of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293-95, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

24      [2] Defendant steadfastly denies that Plaintiff is entitled to recover any damages. However, for purposes of establishing diversity jurisdiction, Defendant and the Court must examine the Complaint and other available evidence to determine whether, if the claims have merit, it is more likely than not that Plaintiff could recover an amount equal to or greater than $75,000.00. *See, e.g.*, Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2002), 2:661.3 ("The appropriate measure is the litigation value, assuming that the allegations of the complaint are true and that a jury returns a verdict for plaintiff on all claims made in the complaint. (citing *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (SD AL 1997)).

1   *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D. W.V. 1999); *Faulkner v. Astro-Med, Inc.*, 1999 WL

2   820198 (N.D. Cal.). Here, the Complaint alleges that his annual income totaled $83,000.00 plus

3   benefits before his termination (Complaint, at ¶ 12), and he seeks damages for, among other things,

4   back pay and front pay (Complaint, at 6:4-5). Defendant has submitted documents that confirm

5   Plaintiff's annual income, including base salary and commissions. (*See* Exs. 3-6.) At the time of

6   removal, Plaintiff had been separated from his employment with Defendant for approximately

7   thirty-one months.

8            In addition, a mere four months after Plaintiff's termination, he demanded a settlement

9   payment of $250,000.00, which his counsel contended "represent[ed] two years' worth of salary

10  plus emotional distress damages [and was] reasonable in light of the unlawful conduct endured by

11  Mr. Lierman and his family and the salary he earned." (*See* Ex. 7, at 6.) From the time of that

12  initial demand until the removal, Plaintiff did not reduce the demand amount. It logically follows

13  that Plaintiff will argue his damages have increased in the intervening twenty six months. It also

14  logically follows that if he was willing to "compromise" his claims for $250,000.00, he in fact

15  places a much higher value on the amount he will receive at trial. *See, e.g.*, Schwarzer, Tashima &

16  Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group  2002), 2:664.11

17  (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (SD AL 1997)

18  ("If plaintiffs are willing to settle the case for the sum of $70,000, then it follows a fortiori that

19  plaintiffs would expect to receive considerably more than $70,000 at trial." ).)  Plaintiff's counsel

20  also rejected Defendant's proposed stipulation for remand, stating that "[w]e're not interested in

21  stipulating to that [sic] the case is worth less than the jurisdictional limit, so that's not an option …

22  we're not willing to stipulate to anything below the jurisdictional limit." (*See* Ex. 10.)

23        **B.       Damage Awards in Similar Cases Support Diversity Jurisdiction in this Action**

24           Courts routinely uphold awards in excess of $75,000.00 in age discrimination actions. *See,*

25  *e.g., Herr v. Nestle U.S.A., Inc.*, 109 Cal. App. 4th 779 (2003) (affirming damage award of

26  $5,163,600.00 to single plaintiff for intentional discrimination based on age); *Keiferr v. Bechtel*

27  *Corporation*, 65 Cal. App. 4th 893 (1998) (affirming award of $322,975.00 in compensatory

28  damages, $225,000.00 in emotion distress damages and $800,000.00 in punitive damages to single

4

1  plaintiff for age discrimination, breach of an implied oral contract to terminate only for cause and

2  breach of implied covenant of good faith and fair dealing); *Pooshs v. Fluoroware, Inc.*, 1994 WL

3  449033 (N.D. Cal.) (affirming award of $500,000.00 to single plaintiff for age discrimination,

4  breach of an implied-in-fact employment contract and breach of the covenant of good faith and fair

5  dealing); *Ewing v. Gill Industries, Inc.*, 3 Cal. App. 4th 601 (1992) (affirming award of $109,295.00

6  plus undisclosed amount of attorney's fees to single plaintiff for age discrimination).

7        In *Ewing*, the sixty-five year old, eighteen year employee earned $52,624 annually at the

8  time of his termination. *Ewing*, 3 Cal. App. 4th at 608. The *Ewing* defendant, similar to Defendant

9  in this action, argued that plaintiff was terminated as part of a reduction in force. *Id*. at 644-45. The

10  Ewing court affirmed the jury's finding, reduced the award by $13,555.00 for a total award of

11  $109,295.00 plus an undisclosed amount in attorney's fees, for plaintiff's age discrimination claim.

12  *Id*. at 605, 617.

13        In similar fashion, the *Pooshs* court affirmed a $500,000.00 damage award to a fifty-seven

14  year old plaintiff who was terminated after two and one-half years of employment.[3]  *Pooshs v.*

15  *Fluoroware, Inc.*, 1994 WL 449033 (N.D. Cal.). The fifty-seven year old *Pooshs* plaintiff was

16  terminated after "two and one-half years of employment." *Id*. at *1. The defendant contended,

17  similar to Defendant in this action, that plaintiff was terminated "because of a restructuring of

18  technical support for economic reasons, which required closing plaintiff's office and position in

19  California...." *Id*. at *1; *see also Keiferr*,[4] 65 Cal. App. 4th at 895 (plaintiff terminated after

20  "period of corporate 'downsizing'"). The *Pooshs*, *Ewing*, and *Keiferr* decisions raise similar issues

21  to those presented here and, accordingly, for purposes of this Memorandum, offer a comparable

22  measure of damages.

23  ///

24

25        [3] *Pooshs* involved three causes of action, including age discrimination, breach of an implied-in-fact employment contract and breach of the covenant of good faith and fair dealing. *Pooshs v.*

26  *Fluoroware, Inc.*, 1994 WL 449033 (N.D. Cal.). The *Pooshs* court affirmed the jury's finding in favor of plaintiff on each of the three causes of action. *Id*. Even if the award were divided equally

27  among the three causes of action, the award for the age discrimination claim would amount to $166,667.00, an amount well in excess of the amount in controversy requirement.

28        [4] The decision in *Keiferr v. Bechtel*, 65 Cal. App. 4th 893 (1998) reveals few facts surrounding the alleged discrimination.

5

1    **C.    A Hypothetical Damages Calculation Supports Diversity Jurisdiction.**

2        Although Plaintiff's admissions and the damage awards in similar cases support a finding

3    that the amount is controversy has been satisfied, a hypothetical calculation further demonstrates

4    that this Court should retain its jurisdiction.

5                    **a.    Front Pay**

6        In the Demand Letter, Plaintiff's counsel contended that Plaintiff was "currently

7    unemployed despite his efforts at mitigating his damages." [5] (Ex. 7, at 5.) There is no evidence that

8    Plaintiff has found employment in the intervening 27 months; however, even if he has, *if* successful

9    on his claim, his lost wages for a mere six of the 27 months would exceed $40,000.00.[6] This

10    amount does not include benefits, nor does it account for any differential between Plaintiff's salary

11    while employed by Defendant and his salary at his subsequent employer.

12                    **b.    Medical and Related Damages/Expenses**

13        Plaintiff contends that he suffered depression "immediately" after his termination, and a

14    mere four months after his termination, valued his "emotional distress" damages at approximately

15    $87,000.00 ($250,000.00 less two years' salary).[7] (Ex. 7, at 5.) Defendant believes this amount to

16    be excessive by any measure, but even if it were decreased by 75 percent, it still amounts to nearly

17    $22,000.00.

18                    **c.    Punitive Damages**

19        Plaintiff alleges that Defendant acted "with malice, fraud or oppression," and, as a result,

20    punitive damages should be awarded.  Although the evidence will demonstrate that Defendant did

21    not intentionally, willfully, maliciously, fraudulently, negligently or in any other manner

---

22

23        [5] For purposes of this Memorandum, Defendant will treat this statement as true since
Defendant has not had an opportunity to examine it through discovery.  Defendant reserves the right
24    to dispute this and any other statement referred to in this Memorandum.
        [6] Although this exercise requires Defendant to make certain rough calculations, Defendant
25    hereby reserves the right to refute any and all claims to damages, and expressly states that any
damage calculation presented herein is not an admission that Plaintiff has been damaged in any such
26    amount.  To be clear, Defendant denies any and all liability, and that Plaintiff suffered any damages
as a result of Defendant's conduct.
27        [7] For purposes of this Memorandum, Defendant will treat the statement that Plaintiff
suffered from depression as true since Defendant has not had an opportunity to examine it through
28    discovery.  Defendant reserves the right to refute this and any other statement made by Plaintiff or
his counsel that is referred to in this Memorandum.

6

1    discriminate against Plaintiff based on his age, if Plaintiff *were* to establish that Defendant acted

2    with malice, Plaintiff could recover punitive damages. *See, e.g., Keiferr,* 65 Cal. App. 4th 893

3    (affirming award of $322,975.00 in compensatory damages, $225,000.00 in emotional distress

4    damages and $800,000.00 in punitive damages to single plaintiff for age discrimination, breach of

5    an implied oral contract to terminate only for cause and breach of implied covenant of good faith

6    and fair dealing). Although courts, such as the *Keiferr* court, have awarded hundreds of thousands

7    of dollars in punitive damages in age discrimination actions, even if the amount were limited to

8    equal Plaintiff's lost wages, the total of lost wages, emotional distress and punitive damages already

9    far exceeds this Court's jurisdictional threshold.

10                          **d.    Attorney's Fees.**

11          A court may award attorney's fees to a successful plaintiff in an action stemming from a

12   violation of California Government Code section 12940 et. seq. *See, e.g., Ewing v. Gill Industries,*

13   *Inc.,* 3 Cal. App. 4th 601 (1992) (affirming award of $109,295.00 plus undisclosed amount of

14   attorney's fees to single plaintiff for age discrimination); *see also* Cal. Gov. Code § 12965 ("In

15   actions brought under this section, the court, in its discretion, may award to the prevailing party

16   reasonable attorney's fees and costs, including expert witness fees, except where the action is filed

17   by a public agency or a public official, acting in an official capacity.") The attorney's fee

18   calculation begins on the first day of representation through the date of removal. *See Conrad,* 994

19   F. Supp. at 1200. Defendant has no way to know the fee arrangement between Plaintiff and his

20   counsel, nor can Defendant estimate the time Plaintiffs' counsel has expended in preparing two

21   letters, a complaint, and counseling with his client. (Defendant does note Goffar's contention that,

22   as of December 4, 2002, he had spent "many hours" counseling Plaintiff.)

23          All of these fees, incurred over a period of more than two years, could be recovered were

24   Plaintiff to prevail, further exceeding the $75,000.00 jurisdictional threshold.

25          **D.    Public Policy Considerations**

26          The purpose of diversity jurisdiction is, in essence, to level the playing field between non-

27   resident/citizen defendants and citizen plaintiffs. *See, e.g., Pease v. Peck,* 59 U.S. 518, 520 (1856);

28   *Barrow S.S. Co. v. Kane,* 170 U.S. 100 (1898) (purpose of diversity jurisdiction is to "secure a

                                                    7

1   tribunal presumed to be more impartial than a court of the state in which one litigant resides.'); *The*

2   *Federalist, No. 80*, at 537-38 (Alexander Hamilton) (Jacob E. Cooke, ed. 1961). If Plaintiffs are

3   allowed to skirt diversity jurisdiction by simply asserting an unspecified amount of damages, non-

4   citizen defendants more often than not would be turned away from federal court. Here, Plaintiff

5   demanded a settlement payment of $250,000.00 a mere four months after Plaintiff's termination.

6   (*See* Ex. 7.) Plaintiff then waited twenty-two months to file the Complaint, which he filed on the

7   last day before expiration of the statute of limitations. (*See* Notice of Removal, Ex. 1.) During the

8   nearly two years between the initial demand and the filing of the Complaint, Plaintiff did not make

9   a single attempt to reduce his initial demand. If the Court were to find that Plaintiff's failure to

10  plead a specific damage amount precluded diversity jurisdiction, the result would be a windfall for

11  Plaintiff, who clearly valued his case at significantly more than $75,000.00. Plaintiff would secure

12  at the time of removal home court advantage, argue at trial for damages well in excess of the

13  jurisdictional minimum, and deprive Defendant of the protections of a neutral, federal forum, to

14  which it is entitled.

15  **IV.    CONCLUSION**

16        The Complaint, Plaintiff's annual income prior to termination, Plaintiff's settlement

17  demand, Plaintiff's unwillingness to stipulate that the damages do not exceed $75,000.00, the

18  damage awards in similar cases, hypothetical damages calculations, and Plaintiffs' claim for back

19  pay, front pay, medical and related expenses, attorney's fees and punitive damages establish by a

20  preponderance of evidence the satisfaction of the amount in controversy requirement. If the Court

21  has any remaining doubt the jurisdictional limit, Defendant respectfully requests that the Court

22  allow for limited discovery to be completed on shortened time.

23  Dated:  January 21, 2005                          FISH & RICHARDSON P.C.

24

25                                          By: _____

26                                               Craig E. Hunsaker, Esq.
                                                Kristi Bess Panikowski, Esq.

27
                                               Attorneys for Defendant, AVNET, INC.

28

                                     8

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and not a party to the above-entitled action.  On January 21, 2005, I served a true copy of:

1.    **DEFENDANT AVNET, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE RE REMAND;**

2.    **DECLARATION OF VIET LE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE RE REMAND; and**

3.    **DECLARATION OF CRAIG E. HUNSAKER IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO ORDER TO SHOW CAUSE RE REMAND.**

by personally delivering it to the person(s) indicated below in the manner as provided in FRCivP 5(B); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:

John R. Goffar, Esq.                        <u>Attorney for Plaintiff</u>
The Law Offices of John R. Goffar           DONALD LIERMAN
110 West C Street, Suite 1300
San Diego, CA 92101

| XX | **PERSONAL:** | Such document was delivered by hand to the addressee shown above at the address shown above, unless otherwise noted above. |

Executed on January 21, 2005, at San Diego, California.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct.

_____
Kelly Jenckes

10474782.doc

1